1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS JOHN SMITHSON,

11              Petitioner,              No. CIV S-01-1373 GEB DAD P

12        vs.

13   DERRAL ADAMS, Warden, et al.,

14              Respondents.             FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding by counsel with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 1998 judgment of

18   conviction entered against him on June 30, 1998 in the Sacramento County Superior Court on

19   charges of first degree murder, attempted robbery, and being a convicted felon in possession of a

20   firearm, with the special circumstance that the murder was committed in furtherance of the

21   robbery and with an enhancement for personally using a firearm in the commission of the

22   offenses.   Petitioner seeks relief on the grounds that: (1) he was denied due process of law when

23   the trial court allowed the prosecution to introduce evidence that he had suffered a prior

24   conviction for burglary; (2) he was denied the effective assistance of trial counsel in violation of

25   the Fifth and Fourteenth Amendments; and (3) he was denied due process of law because the

26   evidence introduced at his trial was insufficient to support the attempted robbery and felony

1

murder convictions and the robbery special circumstance finding.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL AND FACTUAL BACKGROUND[1]

The case against both defendants was prosecuted in a single trial but before dual juries.  On June 4, 1998, one jury convicted Spence of first degree murder (§ 187, subd. (a)) and second degree robbery (§ 211).  The jury found the existence of a special circumstance in that Spence committed the murder in furtherance of the robbery (§ 190.2, subd. (a)(17)), and found that a principal in the felony was armed with a firearm (§ 12022, subd. (a)(1)).  Because Spence was 16 years old at the time of the crime, the trial court exercised its discretion under section 190.5, subdivision (b), and sentenced Spence to state prison for a term of 25 years to life with the possibility of parole for the murder conviction, plus a one-year enhancement for the section 12022, subdivision (a)(1) finding. The court stayed imposition of sentence on the robbery conviction pursuant to section 654.

On June 8, 1998, the other jury convicted Smithson of first degree murder (§ 187, subd. (a)), attempted robbery (§§ 211, 664), and of being a convicted felon in possession of a firearm (§ 12021).  The jury found the existence of a special circumstance in that Smithson committed the murder in furtherance of the robbery (§ 190.2, subd. (a)(17)), and found that Smithson personally used a firearm in the commission of the crimes (§ 12022.5, subd. (a)).  The trial court sentenced Smithson to life imprisonment without the possibility of parole for the murder conviction and special circumstance finding. The court also sentenced him to 10 years for the gun-use finding relating to the murder count and five years for the prior-conviction finding.  The court stayed imposition of sentence on the other convictions and the gun-use finding on the robbery count pursuant to section 654.  Both defendants timely appealed.

A.  Evidence submitted to both juries

On the morning of April 18, 1997, 16-year-old Tonelli burglarized a home in the Orangevale area of Sacramento County.  He stole a number of items, including a butterfly knife and $1,000 in cash consisting of nine $100 bills and two $50 bills.  At about 10 a.m., Tonelli went to the house of a friend, Melissa Johnston, to share the news of his new wealth.  Johnston saw Tonelli count the money

---

[1]  The following summary is drawn from the March 29, 2000 partially published opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 3-13, filed in this court on October 1, 2004, as Ex. A to the amended petition.

and put it in his wallet.  Tonelli left Johnston's home around noon on Johnston's bike headed for 7175 Woodmore Oaks where both Spence and Smithson resided (the "Spence residence").  Before leaving, Tonelli informed Johnston he would return later so he could take his friends to the mall and spend money on them.

Witnesses described the Spence residence as a "crash pad" where a number of acquaintances of Spence and his family lived at various times and used illegal drugs.  Barbara Spence, Spence's mother, owned a .38 caliber revolver which she kept on a shelf inside the headboard of her bed and behind her pillows fully loaded with five bullets.  She also kept an ammunition box on her headboard.  The box held 60 bullets.  At that time, it contained 54 bullets.  Five of the 60 were loaded in the gun, and a sixth had been previously fired.  When she left for work that morning, she locked her bedroom door, as was her custom.

Along the way to the Spence residence, Tonelli met Frank Cianciolo, a house-mate of Spence and Smithson.  Tonelli told Cianciolo he was going to the Spence residence and asked if Spence was home.  When Cianciolo informed him Spence was home sleeping, Tonelli said he knew that because he had just spoken with Smithson by telephone.

At approximately 3:30 that afternoon, another resident of the Spence residence, Aaron Umfleet, and his girlfriend, Marshelle Birchman, arrived at the Spence residence to wash their laundry.  Tonelli was there when they arrived.  Umfleet informed Tonelli he did not have money he owed Tonelli, but Tonelli told him "don't trip."  Tonelli stated he had $1,000 and fanned a large amount of cash before Umfleet.

Tonelli showed Umfleet a small baggie of methamphetamine and offered it to Umfleet.  Smithson, however, stated Tonelli had already promised to give the drugs to him.  Tonelli agreed, and did not give the drugs to Umfleet.  Instead, Tonelli agreed to give Umfleet $150 to buy drugs, resell them at a profit, and then pay Tonelli back.  During his time at the Spence residence, it appeared to Umfleet that Smithson did not let Tonelli out of his sight.

At about 3:50 p.m., Birchman told Umfleet they had to leave, even though they had not yet washed their laundry.  Smithson, who appeared to Umfleet to be "jacked up" on methamphetamine, also told Umfleet and Birchman at least three times they had to leave immediately.  Smithson asked Umfleet to pick up some money for him.  Umfleet replied he did not understand, but Smithson stated Birchman would understand.

Birchman, however, stated Smithson asked them to leave because a drug transaction was about to occur in the house and he needed them to leave for about 30 minutes.  He told them he would give

3

them $50 to give him a ride somewhere when they came back. Smithson had not offered that much money for a ride before.

As Umfleet and Birchman left, Spence was sitting in his bedroom smoking marijuana. He was wearing pants and a white T-shirt at that time. Tonelli walked Umfleet and Birchman outside with Smithson following behind them. Tonelli then gave Umfleet the $150. When Umfleet and Birchman left, Tonelli, Spence, and Smithson were the only people they knew to be inside the Spence residence at that time.

At some point after 4 p.m., Spence arrived at the home of Jessica Hitson, located three houses away from the Spence residence. Spence was crying. He was wearing pants but not a shirt, and was carrying his shoes. He did not have any blood on him. Hitson let Spence into her house, and at 4:38 p.m. she telephoned "911."

Meanwhile, Smithson had placed a "911" telephone call at 4:36 p.m. In his opening brief, but without citing to the record, Smithson claims he was frantic during the call and told the operator Tonelli had been shot. He also mentioned Russian Roulette. The operator told Smithson to place a towel on Tonelli's neck to stop the bleeding.

Sheriff's deputies arrived at the Spence residence shortly thereafter. They found Smithson in Spence's bedroom kneeling over Tonelli with his right hand on Tonelli's neck. Tonelli was laying on his back on a mattress and was bleeding heavily. Smithson was asking for help and saying, don't die on me." Deputies noticed a handgun on the floor about five feet away from Smithson.

A deputy took custody of Smithson and placed him in the backseat of a patrol car. Smithson was frantic, crying, and had blood on his hands and shirt. While being escorted to the car, Smithson said, "I didn't mean it, we were just fooling around" and "it was an accident." When he first sat in the car, Smithson was concerned about the blood on his hand and asked the observing deputy to "please get this shit off me." When the deputy said he couldn't help him, Smithson repeated, "Oh God, help me please, oh, shit."

Smithson stayed in the car for approximately two-and-a-half hours. during that time, he made the following statements: "Is he going to be all right? Can you call and see if he is going to be all right? Please clean me up. I fucking told him. I fucking told him. Can you find out how he is? Let me out of here. Am I under arrest? Where did they take him? Where is he at? Please call my mom. Am I under arrest? Handcuff me or something. Why did this happen? If they put my face on TV I'll sue them. Please get me something to clean this off. I need to wash this off. Damn it, get this off me, please. What was he thinking?" When a television

4

cameraman started filming Smithson through the car window, Smithson said, "Stupid, stupid, stupid, as stupid as, mother fucker, I have enough problems, asshole."

By the time paramedics arrived, Tonelli had died.  Deputies recovered various items from the body, including a butterfly knife and a baggie of methamphetamine.  Deputies also recovered Tonelli's wallet, but there was no money in it.  Deputies, investigators and witnesses were unable to find any money at the Spence residence.

At 4:44 p.m., another deputy reported to Hitson's home and found Spence sitting on the floor crying and talking incoherently.  The deputy detained Spence in the rear seat of his patrol car and returned to the Spence residence.

Subsequently, the deputies performed gunshot residue tests on Spence and Smithson.  The tests revealed only one particle of possible gunshot residue on the back of Spence's left hand, but he had washed his hands prior to the test.  Smithson's hands had blood on them.  They also had gunshot residue particles, indicating he had either discharged a firearm or had been close to a firearm when it discharged.  After completing the residue tests, deputies transported Spence and Smithson to the sheriff's station in downtown Sacramento.

At the Spence residence, deputies analyzed the blood found in Spence's bedroom.  they also found blood on the door handle and deadbolt on the inside of the front door of the house.  They collected, among other items, the handgun, determined to be a .38 caliber Rossi revolver, a butterfly style knife, and a box of ammunition.  The gun contained one spent shell casing.  Smears and droplets of blood were on the gun which were determined to have been caused by back spattering from a high-impact or close contact gunshot wound.  The droplets of blood on the gun and the back of Smithson's hands, along with the residue test results, were consistent with Smithson firing the weapon.

Forensic evidence demonstrated Tonelli was shot in the upper left neck.  The gun was held so close to Tonelli's neck it left an imprint.  The bullet traveled left to right, front to back and downward at an angle of about 45 degrees.  It struck the right carotid artery, and exited out the back of the upper right arm.  The pathologist who conducted the autopsy concluded the wound was not self-inflicted because the bullet's path angled downward into the neck, not upward into the head as most self-inflicted gunshot wounds in the neck tend to be.

(Opinion at 3-10.)

/////

1    Petitioner filed a timely appeal of his conviction.  (Answer at 2.)  Petitioner's
2  judgment of conviction was affirmed by the California Court of Appeal for the Third Appellate
3  District on March 29, 2000.  On July 19, 2000, the California Supreme Court denied review.
4  (Am. Pet. at 2-3.)
5    Petitioner's pro se federal habeas petition was received by the Clerk of the Court
6  on July 17, 2001.  Respondents filed their answer to the petition on November 8, 2001.
7  Petitioner filed his pro se traverse on February 21, 2002.
8    On March 4, 2002, petitioner filed a motion for appointment of counsel and for an
9  evidentiary hearing.  Upon consideration of the motion as well as the new allegations set forth in
10  petitioner's traverse, the undersigned granted the motion for appointment of counsel.
11    On February 5, 2003, petitioner's counsel moved to stay these proceedings and
12  hold the action in abeyance pending exhaustion of claims in state court by petitioner.  On March
13  12, 2003, the undersigned granted petitioner's motion to stay this action after respondents filed a
14  notice of non-opposition to the motion.  On October 20, 2004, the undersigned granted
15  petitioner's motion to lift the stay and file an amended petition.  Respondents filed their answer
16  to the amended petition on December 29, 2004.  Petitioner filed a reply on April 13, 2005.
17    On July 1, 2005, the undersigned granted petitioner's motion for an evidentiary
18  hearing on the first ground for relief set forth in his amended petition.  A date for the hearing was
19  deferred in order to permit respondents to file a motion for discovery related to that claim.
20    On July 8, 2005, respondents filed a motion to amend their answer to petitioner's
21  amended petition, accompanied by a proposed amended answer.  The undersigned granted
22  respondents' motion on August 15, 2005.  The amended answer was filed on August 15, 2005.
23  Petitioner filed a traverse to the amended answer on April 14, 2006.
24    On August 11, 2005, respondents also filed a motion for discovery in preparation
25  for the evidentiary hearing.  Thereafter, on March 20, 2006, respondents filed a motion to dismiss
26  the claims alleged as the first, second, and third grounds for relief in petitioner's amended

1   petition.  Respondents also filed a motion for reconsideration of the order granting an evidentiary

2   hearing on petitioner's first ground for relief.  The motions were heard on April 21, 2006.

3              On January 31, 2007, this court granted respondents' motion for reconsideration,

4   vacated its order granting petitioner's motion for an evidentiary hearing, and denied petitioner's

5   motion for an evidentiary hearing.  By order dated March 6, 2007, the district court granted

6   respondents' March 20, 2006 motion to dismiss and dismissed petitioner's claims alleged as the

7   first, second, and third grounds for relief in his amended petition.  This action is therefore now

8   proceeding only on the claims alleged as grounds 4, 5, 6 and 7 in petitioner's amended petition.

9                                              ANALYSIS

10  I.  Standards of Review Applicable to Habeas Corpus Claims

11             A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

12  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

13  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

14  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

15  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

16  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

17  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

18  (1972).

19             This action is governed by the Antiterrorism and Effective Death Penalty Act of

20  1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

21  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

22  habeas corpus relief:

23                    An application for a writ of habeas corpus on behalf of a
                   person in custody pursuant to the judgment of a State court shall
24                 not be granted with respect to any claim that was adjudicated on
                   the merits in State court proceedings unless the adjudication of the
25                 claim -

26  /////

                                                    7

1           (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
2   determined by the Supreme Court of the United States; or

3           (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
4   State court proceeding.

5   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

6   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

7           The court looks to the last reasoned state court decision as the basis for the state

8   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

9   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

10  federal habeas court independently reviews the record to determine whether habeas corpus relief

11  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

12  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

13  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

14  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

15  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

16  1167 (9th Cir. 2002).

17  II.  Petitioner's Claims

18       A.  Evidence of Prior Conviction

19          Petitioner claims that his right to due process was violated when the trial court

20  allowed the prosecution to introduce evidence that he had suffered a prior burglary conviction.

21  (Am. Pet. at 16.)  Petitioner argues:

22          The state's theory in the murder case was that Petitioner committed
the murder as part of a plan to rob the victim of money the victim
23  had recently stolen during a burglary.  The evidence that Petitioner
had committed a prior burglary was prejudicial because the jury
24  likely concluded that Petitioner committed the murder because he
had the predisposition to commit crimes.  The nature of the
25  burglary prior conviction was also too prejudicial given the
charged attempted robbery against Petitioner which, under the
26  /////

8

1    state's theory, provided the motive for the murder.  Such evidence
     was inflammatory and likely to render a trial fundamentally unfair.
2

3    (Id. at 19.)

4             The California Court of Appeal fairly explained the background to petitioner's

5    claim in this regard as follows:

6             Article I, section 28, subdivision (f) of the California Constitution
              ("Section 28(f)") states:  "When a prior felony conviction is an
7             element of any felony offense, it shall be proven to the trier of fact
              in open court."  In People v. Valentine, (1986) 42 Cal.3d 170, our
8             Supreme Court interpreted Section 28(f) to require the fact of a
              prior felony to be proven in open court, but not the nature of that
9             felony.  Where the convicted felon charge is prosecuted jointly
              with other criminal charges, the Supreme Court stated "a trial court
10            should, if requested, carefully exercise its discretion whether to try
              an ex-felon count separately 'in the interests of justice.'  Insofar as
11            the particular facts are known pretrial, the court must balance the
              legitimate benefits, judicial and prosecutorial, of a consolidated
12            trial against the likelihood that disclosure of ex-felon status in a
              joint trial will affect the jury's verdict on charges to which that
13            status is irrelevant.  Of course, severance is not necessary if the
              priors on which the ex-felon count is based would be cross-
14            admissible on the remaining charges."  (42 Cal.3d at p. 180, fn. 3,
              emphasis added.)
15
              Consistent with the rule of Valentine, the People here offered to
16            stipulate that when the information was read to the jury, only the
              fact of Smithson's prior felony would be read to them, and the
17            nature of that felony would be omitted.  Smithson rejected this
              proposal, believing it would leave the jury free to imagine that
18            Smithson committed "any and every felony in the world."  He
              would only stipulate to the prior felony conviction not being read
19            to the jury at all.  Since the parties could not reach agreement,
              Smithson moved to sanitize the reading of the information such
20            that neither the fact nor the nature of Smithson's prior felony
              would be read to the jury.  The trial court denied this motion.
21

22   (Opinion at 56-57.)

23            The state appellate court concluded that the trial court's ruling allowing the

24   admission of evidence of petitioner's prior burglary conviction was not improper and did not

25   violate petitioner's constitutional rights.  The appellate court explained its reasoning as follows:

26   /////

9

The trial court's ruling was correct.  Had it granted Smithson's motion, the trial court would have violated the requirements of Section 28(f) by prohibiting the People from alleging, and therefore proving, to the trier of fact, i.e., the jury, in open court the fact of Smithson's prior conviction.  The reading of a count alleging a prior felony conviction does not constitute prejudicial error where the defendant refuses to stipulate to the generic state of his convicted felon status.  (People v. Ratcliff, (1990) 223 Cal.App.3d 1401, 1406-1407.)

Furthermore, because the trial judge instructed the jury not to consider the prior conviction for any purpose other than establishing an element of the section 12021 crime, the reading of the count also did not violate Smithson's due process rights where Smithson refused to stipulate to his status.  (Ibid.)

Smithson retorts, however, that the trial court erred by not interpreting his motion to sanitize the reading of the information as a motion to sever the section 12021 charge from the other charges.  Valentine required the court to consider such a motion "if requested," but Smithson did not request severance.  He only sought for the reading to be sanitized.  Smithson directs us to nothing in the record showing he requested the trial court to sever the section 12021 charge, not does he cite us to any authority requiring the trial court to interpret, sua sponte, his sanitization request as such a motion.  Without such authority, the trial court was under no duty to interpret Smithson's motion as anything other than what he expressly asserted it to be.

(Id. at 57-58.)

A state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  The Supreme Court has held that it is not a violation of due process to admit other crimes' evidence, for purposes other than to show conduct in conformity therewith, where the jury is given a limiting instruction "that it should not consider the prior conviction as any evidence of the defendant's guilt on the charge on

/////

/////

/////

1  which he was being tried." Spencer v. Texas, 385 U.S. 554, 558 (1967)[2]; accord Estelle, 502

2  U.S. at 74-75.

3          As described above, petitioner was charged with and convicted of being a

4  convicted felon in possession of a firearm, in violation of California Penal Code § 12021.

5  Petitioner's jury was instructed that:

6          There has been a stipulation by the parties that the defendant was
        previously convicted of a felony.  A prior conviction of a felony is
7          an essential element of the crime charged, which the prosecution is
        required to prove beyond a reasonable doubt.  You must not be
8          prejudiced against a defendant because of a prior conviction.  You
        must not consider that evidence for any purpose other than for
9          establishing a necessary element of the crime charged.

10  (Clerk's Transcript on Appeal (CT) at 595.)  The jury in petitioner's case is presumed to have

11  followed this instruction.  Old Chief v. United States, 519 U.S. 172, 196-97 (1997); Ho v. Carey,

12  332 F.3d 587, 594 (9th Cir. 2003); United States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998).

13  Under these circumstances, petitioner has failed to demonstrate that his right to due process was

14  violated by the admission into evidence of his prior burglary conviction.  Spencer, 385 U.S. at

15  558.

16          This court also rejects petitioner's argument that the admission into evidence of

17  his prior burglary conviction was unduly prejudicial because of the nature of the other charges

18  against him.  As observed by the California Court of Appeal:

19          Burglary, however, is defined as the entering of a house or
        structure with the intent to commit "any felony," not just crimes of
20          larceny.  (§459.)  Knowledge of Smithson's prior burglary would
        not lead a reasonable juror to believe Smithson was predisposed to
21          commit the crimes of murder and armed robbery."

22  /////

23  /////

24  ───────────────────

25          [2]  The court also noted that it had on several occasions sustained recidivist statutes
   "against contentions that they violate constitutional strictures dealing with double jeopardy, ex
26  post facto laws, cruel and unusual punishment, due process, equal protection, and privileges and
   immunities."  Spencer v. Texas, 385 U.S. 554, 560 (1967).

1   (Opinion at 60.)  This court agrees with the California Court of Appeal that evidence petitioner

2   had previously committed a burglary, when he was not charged with a burglary in this case, did

3   not deprive him of the fair trial guaranteed by due process.

4          A federal court cannot disturb on due process grounds a state court's decision to

5   admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or

6   so prejudicial that it rendered the trial fundamentally unfair.  See Payne v. Tennessee, 501 U.S.

7   808, 825 (1991) ("In the event that evidence is introduced that is so unduly prejudicial that it

8   renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment

9   provides a mechanism for relief."); Estelle v. McGuire, 502 U.S. 62, 75 (1991) (prohibiting

10  admission of evidence if it "so infuse[s] the trial with unfairness so as to deny due process of

11  law"); Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  The admission of prior crimes'

12  evidence could conceivably violate due process only if there are no permissible inferences that

13  the jury may draw from the evidence.  See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.

14  1991).  Here, the evidence of the prior conviction was admitted for the constitutionally

15  permissible purpose of proving the charge of possession of a firearm by a felon.  Further, the

16  evidence was admitted only after petitioner elected not to stipulate to the fact of his prior felony

17  conviction.  Under these circumstances, the state court's rejection of petitioner's federal due

18  process claim was neither contrary to, nor an unreasonable application of controlling principles

19  of federal law.  Accordingly, petitioner is not entitled to habeas relief on this claim.

20          B.  Ineffective Assistance of Trial Counsel

21          Petitioner claims that his trial counsel rendered ineffective assistance because of

22  his failure to move to sever, for purposes of trial, the charge of being a convicted felon in

23  possession of a firearm in violation of Penal Code § 12021 charge from the other charges against

24  him.  He argues that counsel's omission in this regard allowed the jury to hear evidence "of an

25  unduly prejudicial prior conviction."  (Am. Pet. at 19.)  Petitioner contends that evidence of his

26  /////

1   prior burglary conviction was especially prejudicial here, where the only direct evidence that

2   petitioner shot the victim was presented only to the jury in the case of his co-defendant, Spence.

3          The California Court of Appeal rejected petitioner's arguments in this regard,

4   reasoning as follows:

> Smithson is unable to establish prejudice.  Certainly, the trial court's denial of a motion to sever had Smithson filed one would not have constituted an abuse of discretion.  (citation omitted.) Hearing the charge of being a convicted felon in possession of a firearm would not likely have inflamed the jury against Smithson on other charges.  Smithson's prior conviction of the crime of burglary is too dissimilar from the crimes of murder and robbery to ignite prejudicial feelings in jurors.  Under these circumstances, there would have been no abuse of discretion in denying a motion to sever the section 12021 charge.  (See People v. Gomez (1994) 24 Cal.App.4th 22, 27-29 [no abuse of discretion for denying motion to sever section 12021 charge from charge of armed robbery].)
>
> Because the evidence on the other charges was also strong, it is unlikely the trial court would have exercised its discretion to grant a motion to sever, or that even if such a motion had been granted, the jury's verdict would have been different.  Smithson argues that once the jury learned of his prior conviction, he could not counter the jury's belief that he had the disposition to commit the crimes of which he was charged.  The trial judge, however, instructed the jury not to consider the prior conviction for any purpose other than establishing an element of the section 12021 crime.  The jurors are presumed to have followed this instruction (citation omitted), and Smithson has not presented any evidence rebutting this presumption.
>
> Smithson further asserts his counsel's decision not to move to sever the section 12021 charge was prejudicial because the crime of burglary could be considered a theft offense, and he was charged with robbery, another theft offense.  Burglary, however, is defined as the entering of a house or structure with the intent to commit "any felony," not just crimes of larceny.  (§ 459.)  Knowledge of Smithson's prior burglary would not lead a reasonable juror to believe Smithson was predisposed to commit the crimes of murder and armed robbery.
>
> Since Smithson is unable to show the outcome of his trial would have been more favorable had his counsel moved to sever the section 12021 charge, he is unable to establish ineffective assistance of counsel.

(Opinion at 59-60.)

1    The Sixth Amendment guarantees the effective assistance of counsel.  The United

2    States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

3    Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

4    counsel, a petitioner must first show that, considering all the circumstances, counsel's

5    performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

6    identifies the acts or omissions that are alleged not to have been the result of reasonable

7    professional judgment, the court must determine whether, in light of all the circumstances, the

8    identified acts or omissions were outside the wide range of professionally competent assistance.

9    Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that

10   he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice

11   is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

12   result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a

13   probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S.

14   at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

15   determine whether counsel's performance was deficient before examining the prejudice suffered

16   by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an

17   ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

18   followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

19   697).

20   The decision of the California Court of Appeal that petitioner failed to

21   demonstrate prejudice with respect to this claim is not contrary to or an unreasonable application

22   of Strickland and may not be set aside.  For the reasons described by the state appellate court, the

23   result of the proceedings would not have been different if petitioner's trial counsel had moved to

24   sever the section 12021 charge from the other charges against petitioner for purposes of trial.

25   Accordingly, petitioner is not entitled to relief on this claim.

26   /////

14

1    C.  Sufficiency of the Evidence

2           Petitioner claims that he was denied due process of law because the evidence

3    introduced at his trial was insufficient to support his attempted robbery and felony murder

4    convictions and the robbery special circumstance finding.  After setting forth the applicable legal

5    principles, the court will evaluate these claims in turn below.

6           1.  Legal Standards

7           The Due Process Clause of the Fourteenth Amendment "protects the accused

8    against conviction except upon proof beyond a reasonable doubt of every fact necessary to

9    constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There

10   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

11   favorable to the prosecution, any rational trier of fact could have found the essential elements of

12   the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also

13   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question

14   under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

15   a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

16   443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when

17   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

18   process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the

19   writ, the habeas court must find that the decision of the state court reflected an objectively

20   unreasonable application of Jackson and Winship to the facts of the case.  Id. at 1275.

21          The court must review the entire record when the sufficiency of the evidence is

22   challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

23   vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

24   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

25   reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  If the trier of

26   fact could draw conflicting inferences from the evidence, the court in its review will assign the

1   inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  "The

2   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

3   the jury could reasonably arrive at its verdict."  United States v. Dinkane, 17 F.3d 1192, 1196

4   (9th Cir. 1994) (quoting United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)).  See also

5   Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines the

6   sufficiency of the evidence in reference to the substantive elements of the criminal offense as

7   defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

8               2.  Attempted Robbery

9               Petitioner argues that the evidence is insufficient to support his conviction on the

10   charge of attempted robbery.  He contends that all of the evidence of an attempt to rob the victim

11   came in the form of admissions made by his co-defendant, Spence, which were admitted into

12   evidence for consideration only to the jury in Spence's case.  He contends that the evidence

13   introduced at his own trial "equally supported petitioner's claims on the 911 tape that the victim

14   was accidentally killed playing Russian roulette."  (Am. Pet. at 24.)

15               The California Court of Appeal rejected petitioner's arguments in this regard,

16   reasoning as follows:

17               Here, substantial evidence exists from which a jury could find that
                Smithson attempted to rob the victim.  On the morning of his
18               murder, the victim burglarized an Orangevale home and stole
                $1,000 in cash and other items.  He informed friends of his new
19               wealth, and showed the money to one of them.  At one point after
                the robbery, the victim spoke with Smithson by telephone.
20
                The victim eventually went to the Spence residence, where
21               Smithson and Spence resided.  In the presence of Smithson, the
                victim showed Umfleet he had money and drugs in his possession,
22               and in fact gave Umfleet $150.  Smithson appeared to keep the
                victim in his sight at all times.  Smithson then coaxed Umfleet and
23               Birchman to leave the house, using inconsistent reasons to justify
                their departure.  He insisted they had to go.  Following their
24               departure, the victim, Smithson and Spence were the only persons
                in the house.
25
                Expert evidence demonstrated the victim was killed by a gunshot
26               wound to the neck.  The evidence also demonstrated the shooting

                                        16

was not a suicide.  Rather, the shot was fired from a gun while it was being held by Smithson.  Marks on the victim's body suggested the muzzle of the gun had been placed on the victim's throat, pointing downward, at the time of the gun's firing.

When emergency personnel arrived and searched the victim's body, he no longer had any money in his possession.  No money was found in the Spence house.  Also, only approximately $100 was found in Smithson's possession.  Evidence also demonstrated that Spence left his house sometime after the victim's death and removed his shirt before he was next seen by anyone.  However, Spence was not searched at that time.

This constitutes substantial evidence on which the jury could rely to find Smithson guilty of attempted robbery.  (Indeed, the evidence is consistent with a completed robbery.)  Smithson claims the evidence did not show the element of force because the victim apparently was in a generous mood, having given money to Umfleet and promised to give drugs to Smithson.  The "force or fear" element was satisfied by evidence showing that, although Smithson says he never threatened or forced the victim, at the time the gun was discharged, the gun was placed closely against the victim's neck and Smithson was holding the gun.

Smithson asserts his asking Umfleet and Birchman to return to the Spence home in one-half hour suggests he did not intend to rob the victim.  However, the evidence also showed Smithson asked them to return to give him a ride, and that he would pay them $50 for that ride.  Apparently, Smithson knew he would be in serious need of transportation away from the Spence home in one-half hour; otherwise, he would not have offered what for him was a large sum of money just for a ride.  Birchman testified Smithson had never offered him [sic] that much money for a ride.

Smithson also claims his actions and statements after the shooting do not support the attempt conviction.  Witnesses heard Smithson state, "I didn't mean it, we were just fooling around," "it was an accident," and when asking whether the victim would be okay, "I fucking told him," "[w]hy did this happen," and "[w]hat was he thinking."  These statements can reasonably be interpreted as expressions made by someone who initially intended to take money by force or fear, i.e., to use a loaded handgun, but wound up inflicting a fatal gunshot wound contrary to his original intent.

When two or more inferences can be deduced from facts, this court is without power to substitute its deductions for those of the jury.  Smithson's contrary interpretations notwithstanding, if the evidence is sufficient and can reasonably support the conclusion reached by the jury, we are obligated to uphold the jury's

/////

17

1          determination.  (citation omitted.)  Such is the case here.
           Substantial evidence supports Smithson's conviction of attempted
2          robbery.

3    (Opinion at 52-55.)

4          Pursuant to California law, petitioner could be found guilty of attempted robbery

5    if he "(1) harbored the specific intent to commit the crime, and (2) committed a direct ineffectual

6    act towards its commission."  (Id. at 51.)  Robbery is defined as "the felonious taking of personal

7    property in the possession of another, from his person or immediate presence, and against his

8    will, accomplished by means of force or fear."  (Cal. Penal Code § 211.)  Viewing the evidence

9    in the light most favorable to the verdict, and for the reasons described by the California Court of

10   Appeal, the undersigned concludes that there was sufficient evidence from which a rationale trier

11   of fact could have found beyond a reasonable doubt that petitioner was guilty of attempted

12   robbery as defined by California law.  The state appellate court opinion rejecting petitioner's

13   claim in this regard is a reasonable construction of the evidence in this case and is not contrary to

14   or an objectively unreasonable application of federal law.  See Woodford v. Visciotti, 537 U.S.

15   19, 25 (2002); see also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas

16   relief on this claim.

17          3.  Robbery Special Circumstance

18          Petitioner also claims the evidence was insufficient to support the jury's finding

19   that the special circumstance allegation that the killing was committed in furtherance of the

20   robbery was true.

21          Pursuant to California law, the special circumstance finding must be supported by:

22   "(1) substantial evidence from which the jury could convict [petitioner] of attempted robbery,

23   and (2) substantial evidence showing the murder was committed during the commission or

24   attempted commission of the robbery."  (Opinion at 55.)  As described above, the state appellate

25   court concluded there was substantial evidence to support petitioner's conviction on the charge of

26   attempted robbery.  That court also concluded that there was sufficient evidence to support a

18

1  finding that the murder was committed during the commission or attempted commission of the

2  robbery.  The court reasoned as follows:

3              There is no direct evidence in the record Smithson or Spence had
             an independent motive or intent to kill the victim other than to rob
4              him.  In fact, the three were friends.  The motive for criminal
             behavior seems to have arisen only from the victim having cash
5              and drugs in his possession.  This, coupled with Smithson's acts
             and statements after the killing, suggest the motive was to rob, not
6              to kill.  This evidence sufficiently established the murder was
             committed during the commission of a felony.

7

8  (Id. at 56.)  The state court essentially found that, in reality, the only reasonable interpretation of

9  the evidence is that petitioner killed the victim during the commission of the robbery and for the

10  purpose of committing the robbery.  This is because there was no evidence that petitioner and

11  Spence harbored malice towards the victim or intended to kill him for any reason independent of

12  the robbery.

13              The conclusion of the state court that the evidence supported the jury's finding

14  that the murder was committed during the commission of the robbery is a reasonable

15  construction of the evidence in this case and is not contrary to or an objectively unreasonable

16  application of United States Supreme Court authority.  Accordingly, petitioner is also not entitled

17  to relief on this claim.

18              4.  Felony Murder

19              In his final claim, petitioner argues that:

20              there was insufficient evidence that Petitioner committed an
             attempted robbery.  As this felony was the basis for felony murder
21              liability, the murder conviction also rests on constitutionally
             insufficient evidence.  This violated Petitioner's due process rights
22              as clearly established in In re Winship and Jackson, supra.

23  (Am. Pet. at 28.)  As discussed above, there was sufficient evidence to support petitioner's

24  conviction on the charge of attempted robbery.  Accordingly, petitioner's conviction on the

25  charge of felony murder based on the predicate felony offense of attempted robbery did not

26  violate his right to due process.

19

1                                    CONCLUSION

2          For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

3   application for a writ of habeas corpus be denied.

4          These findings and recommendations are submitted to the United States District

5   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

6   days after being served with these findings and recommendations, any party may file written

7   objections with the court and serve a copy on all parties.  Such a document should be captioned

8   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9   shall be served and filed within ten days after service of the objections.  The parties are advised

10  that failure to file objections within the specified time may waive the right to appeal the District

11  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12  DATED: November 15, 2007.

13

14  _____

15  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

16  DAD:8
    smithson1373.hc

17

18

19

20

21

22

23

24

25

26

                                            20